UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GARRY ARTHUR,
KEITH FREEMAN, and
ROBERT WATTS                                                              PLAINTIFFS

V.                                              CIVIL ACTION NO. 3:23-CV-544-DPJ-ASH

CITY OF JACKSON, CHIEF JAMES
DAVIS, Individually and in His Professional
Capacity, and JACKSON POLICE DEPARTMENT                                   DEFENDANTS

ORDER

Former Jackson Police Department officer Keith Freeman claims JPD refused him overtime compensation because he is White. Defendants seek summary judgment. The Court grants their motion [116] because Freeman failed to timely exhaust his Title VII claim and has not demonstrated disparate treatment.

I.      Relevant Facts and Proceedings

In 2020, current and former employees of the Jackson Police Department sued JPD, the City of Jackson, and various others for alleged civil-rights violations and state-law torts. Compl. [1]. The Court sorted through various motions to dismiss in its September 30, 2022 Order [68], granting some and denying others. After a settlement conference further narrowed the parties and claims, the Court severed six Plaintiffs' cases into three civil actions. *See* Order [70]. Three Plaintiffs were assigned to this case. Of those, Garry Arthur voluntarily dismissed [103] his suit, leaving Keith Freeman and Robert Watts. When the deadline for dispositive motions came, Defendants moved for summary judgment against Freeman alone. Since that time, Defendants have settled with Watts. Order [125].

Freeman, a White male, alleges racial discrimination against him by the City of Jackson and former police chief James Davis.  In his EEOC charge, Freeman said he became a lieutenant at some point "and was the highest[-]ranking white officer."  EEOC Charge [116-2] at 1.  According to Freeman, because lieutenant was a salaried position, he was allowed to "bank" overtime hours for later paid time off.  *Id*.  He says Black officers were allowed to use accumulated "deferred time" before taking retirement, but Davis refused Freeman permission because he is White.  *Id*. at 1–2.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id*. at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

The party opposing summary judgment must identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992).  And disputed fact issues that are "irrelevant and unnecessary" to deciding the motion will not be considered by the Court.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.    Discussion

The City and Davis have three arguments for summary judgment:  (1) Freeman's EEOC charge was filed too late for him to bring a Title VII suit; (2) he can't show any constitutional violation by Davis, who thus is entitled to qualified immunity; and (3) he likewise has no Equal Protection Clause claim against the City because he can't identify an unconstitutional policy or custom that caused a constitutional violation.  Freeman disagrees.

A.    The Title VII Claim Is Untimely

Freeman notified JPD on December 30, 2019, that he was retiring and wished to use his 18 vacation days up to January 18, 2020, after which his retirement would take effect.  Dec. 30,

2019 Mem. [116-1] at 2.  On September 28, 2020—273 days later—Freeman filed a racial-discrimination charge with the EEOC.  He complained that, unlike Black officers, he did not have his overtime hours "banked," which is the "deferred time" Freeman says JPD denied him.  EEOC Charge [116-2] at 1.  The Department of Justice issued a right-to-sue letter on October 28, 2020, and Freeman filed suit within the allowed 90 days.  Letter [116-3] at 18.

Ordinarily, a Title VII plaintiff must file an EEOC charge within 180 days of the employer's violation.  *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999).  So if Freeman knew about the disparate treatment when he retired, then his EEOC charge was 93 days late.  Freeman never explains why his charge was timely but argues that the Department of Justice would not have issued the right-to-sue letter had he been late.  Pl.'s Mem. [120] at 6.  Factually, the right-to-sue letter makes no findings whatsoever, stating instead that it was issued at Freeman's request.  *Id.*  Legally, Freeman offers no authority suggesting that a right-to-sue letter proves a timely charge, an argument the Fifth Circuit has rejected.  *See Cutliff v. Greyhound Lines, Inc.*, 558 F.2d 803, 806 (5th Cir. 1977) (holding that district court erred by accepting right-to-sue letter as proof of timely EEOC charge of discrimination).[1]

Aside from the right-to-sue notice, Freeman quotes a case saying that "once the plaintiff has knowledge sufficient to support her claim, the 180-day limitations period begins."  Pl.'s Mem. [120] at 7 (quoting *Spann v. FedEx Freight, Inc.*, No. 3:23-CV-399-TSL-RPM, 2024 WL 3155888, at *2 (S.D. Miss. June 17, 2024)); *see Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (same).  That's true.  The 180-days deadline will equitably toll if the claimant does not at first know the facts giving rise to his Title VII claim.  *Hood*, 168 F.3d at

---

[1] *Cutliff* does treat the 180-days rule as jurisdictional, which it is not.  *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008).  But that does not impair its holding as applied here:  whether jurisdictional or not, a right-to-sue letter does not prove a timely charge.

4

232. But Freeman bears the burden to show that equitable tolling applies, *id.*, and he never explains why it does.

Nor has Freeman offered any evidence to establish tolling. As noted, Rule 56 required Freeman to identify specific record evidence and articulate precisely how that evidence supports his claim. *Forsyth*, 19 F.3d at 1537. Freeman cites no record evidence suggesting he discovered the alleged discrimination within 180 days of his EEOC charge, and the evidence at least suggests he knew there was a problem before he retired. *See* McGowan Aff. [119-9] ¶ 4 (swearing that Freeman complained about the hours while employed with JPD); EEOC Charge [116-2] at 1 (stating that he demanded the hours before retiring). In any event, Freeman has not proved that equitable tolling applies. And because he did not timely exhaust his administrative remedies, his Title VII claim must be dismissed on this basis alone.[2]

      B.      Equal-Protection Claim

Freeman also lodges claims against the City and Davis under the Equal Protection Clause. Unlike Title VII, there are no administrative-exhaustion requirements for an equal-protection claim and no procedural bars to it in this case. The Court therefore examines the claims on their merits.

The Equal Protection Clause forbids states and their political subdivisions from denying "to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1057 n.25 (5th Cir. 1984) ("Of course, for purposes of the Equal Protection Clause, state action includes the actions of its political

---

[2] Even assuming a timely charge, the Title VII claim would still fail on the merits for the same reasons the equal-protection claim must be dismissed.

subdivisions."). That protection includes the right to equal treatment in "public employment." *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997) (citation omitted).

Freeman correctly pursues his equal-protection claim under § 1983, which creates a private right of action for alleged equal-protection violations against any "person" who commits those violations while acting "under color of" state law. 42 U.S.C. § 1983. There is no dispute Davis acted "under color of" state law, and municipalities—like Jackson—are considered "person[s]" under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

As a final preliminary note, Davis asserts qualified immunity from the equal-protection claim, which puts the burden on Freeman to show that Davis violated his equal-protection rights and that those rights were clearly established when he did. *Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019). Davis seems to concede that the right to equal protection in employment is clearly established. So, the question is whether Defendants violated the Equal Protection Clause. To answer that question, the Court turns to the analysis applicable under Title VII because the "inquiry into intentional discrimination is essentially the same for individual actions brought under" § 1983 and Title VII. *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).[3]

1. Direct or Circumstantial Evidence

For "disparate-treatment cases, proof and finding of discriminatory motive is required." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Pacheco v.*

---

[3] Freeman mistakenly argues that qualified immunity fails because the Court rejected it when Davis sought dismissal under Rule 12(b)(6). Pl.'s Mem. [106] at 2 (citing Order [68]). True, the Court denied Davis's Rule 12(b)(6) motion. But that just means Freeman pleaded a plausible claim that survived Davis's qualified-immunity defense at the pleading stage. A defendant may

*Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)). "A plaintiff 'may prove a claim of intentional discrimination . . . either by direct or circumstantial evidence.'" *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

Freeman believes this is a direct-evidence case because he is White and was denied a benefit that Black officers received. Pl.'s Mem. [120] at 7. But "[d]irect evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). The evidence must therefore be "direct and unambiguous." *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 119 (5th Cir. 2003) (quoting *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).

For instance, the Fifth Circuit found direct evidence in *Jones v. Robinson Property Group, L.P.*, because the decisionmaker regularly used a racist epithet and said, "[T]hese good old white boys don't want black people touching their cards." 427 F.3d 987, 993 (5th Cir. 2005). These statements proved discriminatory intent without inference or presumption. *Id.* Freeman's evidence depends on the inference that he was treated differently because of race and is therefore circumstantial.

2.  Burden Shifting

When, as here, a plaintiff's case rests on circumstantial evidence, both Title VII and § 1983 apply the same burden-shifting framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under that test, Freeman must first show a prima facie case of discrimination. *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 998–99 (5th Cir.

---

raise the defense at both the pleading stage and the summary-judgment stage. *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). And under Rule 56, the plaintiff must produce evidence.

7

2022). If he does, Defendants must show a legitimate, nondiscriminatory basis for their action. *Id.* The burden then returns to Freeman to create a fact issue whether that basis is mere pretext for discrimination. *Id.*

"A prima facie case [of disparate treatment] may be established by a showing that the plaintiff was a member of an identifiable [protected class]; that he was qualified for the benefit . . . he sought; that he was denied these benefits and such denial constitutes an adverse employment decision; and that the adverse employment decision was differentially applied to plaintiff." *Rubinstein v. Admins. of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000). "To satisfy the fourth prong, a plaintiff must engage in a 'comparator analysis' to establish he was treated less favorably than a similarly situated employee outside his protected class under nearly identical circumstances." *Saketkoo*, 31 F.4th at 998.

2.  Freeman's Proof

While the parties dispute other issues, the most obvious flaw in Freeman's case is his effort to prove the fourth element of the prima facie case—"that the adverse employment decision was differentially applied to plaintiff." *Rubinstein*, 218 F.3d at 399. In other words, that "others similarly situated but outside the protected class were treated more favorably." *Saketkoo*, 31 F.4th at 997–98 (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

Freeman says he can meet that test because Davis allowed two Black officers—Duane Odom and Tina Wallace—to bank their overtime hours and use them later.[4] There is record

---

[4] Freeman mentions other names in his argument. *See* Pl.'s Resp. [119] at 2 (Deric Hearn); Pl.'s Mem. [120] (David Hearn). He says McGowan's affidavit mentions Deric Hearn, but that's incorrect. Pl.'s Mem. [120] at 15; *see* McGowan Aff. [119-9] ¶ 6 (naming "Tina Wallace and others"). And there is no other cited evidence from which a jury could find that other individuals were similarly situated. *See Forsyth*, 19 F.3d at 1537.

evidence suggesting that Wallace and Odom were Black JPD officers who were allowed to bank hours. *See, e.g.*, McGowan Aff. [119-9] ¶ 5–6; Odom Aff. [119-10] ¶ 3. But beyond that, we know too little about Odom and Wallace to find that they were similarly situated.

Comparators must be treated more favorably "in nearly identical circumstances." *Saketkoo*, 31 F.4th at 998. Although "nearly identical" differs from "identical," it is still an exacting standard. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable . . . histories." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012), *as revised* (June 22, 2012) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). If a difference between the plaintiff and the comparator "'accounts for the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

Freeman was an exempt employee. Personnel Action Form [116-1] at 1 (box 16). The City's personnel handbook from 1996, which both sides attach to their motion and response, says overtime "may be required of *exempt employees* when deemed to be in the best interest of the City." Handbook [116-5] § 5.4.2 (emphasis included); *see id*. App'x (defining "exempt employee" as "not eligible for payment of overtime"). Were Odom and Wallace also exempt? And what other facts make their circumstances "nearly identical" to Freeman's?

"To state a claim of . . . discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege *and prove* that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory

9

intent.'" *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004) (emphasis added) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). While Freeman has identified Black officers who were treated differently, he has not cited record evidence that the circumstances were nearly identical. *Lee*, 574 F.3d at 259.

His equal-protection claim therefore fails at the prima facie stage. *See Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 899 (5th Cir. 2025) (affirming summary judgment because plaintiff failed to prove identified comparator was similarly situated and thus failed to make a prima facie case); *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 651 (5th Cir. 2025) (same); *Saketkoo*, 31 F.4th at 998 (same); *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 827 (5th Cir. 2022) (affirming summary judgment when plaintiff failed to identify comparators by name and further failed to "produce any evidence whatsoever that these comparators were similarly situated outside of their job titles"); *Green v. United Parcel Serv., Inc.*, 847 F. App'x 207, 212 (5th Cir. 2021) (holding that plaintiff failed to state prima facie case because he was "unable to show that his comparator's impairment was similar in severity to his own"); *Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 948 (5th Cir. 2020) (affirming summary judgment because "neither of the two white employees who Harris identifies as comparators were similarly situated to him"); *Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 210 (5th Cir. 2020) (affirming summary judgment and finding that plaintiff failed to make prima facie showing that identified comparators were similarly situated); *Stuntz v. Lion Elastomers, L.L.C.*, 826 F. App'x 391, 404 (5th Cir. 2020) (same); *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016) (rejecting identified comparator; "In order for a Title VII plaintiff to establish his prima facie case through the use of a 'similarly situated comparator,' he must establish that the comparator was treated more favorably than the plaintiff under 'nearly identical

circumstances.'") (quoting *Lee*, 574 F.3d at 259); *Hinga v. MIC Grp., L.L.C.*, 609 F. App'x 823, 824 (5th Cir. 2015) (affirming summary judgment because plaintiff failed to "establish[] a prima facie case of discrimination by identifying similarly situated" comparator).[5]

Davis is therefore entitled to qualified immunity and summary judgment in his individual capacity. And without a constitutional violation, the City is also entitled to summary judgment on the equal-protection claim.

C.   Municipal Liability

Even assuming an equal-protection violation, Freeman has not created fact questions as to the other elements of municipal liability. *See Monell*, 436 U.S. at 690. The City is therefore entitled to summary judgment for this separate reason.

There is no respondeat superior liability under § 1983. *Id.* at 691. So "[p]roof of municipal liability . . . requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Freeman notes the City's reliance on these elements in his brief but never addresses the elements with record evidence. *See* Pl.'s Mem. [120] at 9. He does suggest that the City violated its own policies, *id.*, but that is different from adopting a policy or custom that caused the constitutional violation. *Pineda*, 291 F.3d at 328.

---

[5] In his brief, Freeman devotes substantial attention to the inadmissibility of two documents Defendants cited: their printout of Freeman's 2019 time worked and a 2019 executive order. Pl.'s Mem. [120] at 9–17, 19–21. But Freeman carries the burden of proving disparate treatment. *Rodriguez*, 129 F.4th at 899. And without that evidence, there is no need to consider Defendants' exhibits.

D.    Miscellaneous Issues

Defendant JPD did not join in this summary-judgment motion. But it's well established that, in Mississippi, a police department is not a political subdivision that can sue or be sued. *Berry v. City of Clinton*, No. 3:16-CV-820-DPJ-FKB, 2018 WL 11275433, at *4 (S.D. Miss. Jan. 24, 2018) (Clinton P.D.); *Bradley ex rel. Wrongful Death Beneficiaries of Bradley v. City of Jackson*, No. 3:08-CV-261-TSL-JCS, 2008 WL 2381517, at *2 (S.D. Miss. June 5, 2008) (JPD); *Hammond v. Shepherd*, No. 3:05-CV-398-HTW-JCS, 2006 WL 1329507 (S.D. Miss. May 11, 2006) (McComb P.D.). Suits against a police department are therefore brought against the municipality. *Berry*, 2018 WL 11275433, at *4.

Likewise, the claim against Davis in his official capacity is the same as a claim against the City. *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). It therefore appears such claims are "superfluous" and ripe for dismissal. *Felton v. City of Jackson*, No. 3:18-CV-74-TSL-RHW, 2018 WL 2994363, at *2 (S.D. Miss. June 14, 2018).

"While district courts may grant summary judgment *sua sponte*[,] they must first give the parties notice and a reasonable time to respond." *Keck v. Mix Creative Learning Ctr., L.L.C.*, 116 F.4th 448, 457 (5th Cir. 2024) (citing *D'Onofrio v. Vacation Publ'ns., Inc.*, 888 F.3d 197, 210 (5th Cir. 2018) (quotation marks omitted)). Freeman must show cause why these claims should not be dismissed.

IV.    Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not affect the outcome. Defendants' motion for summary judgment [116] is granted, and

all claims brought by Freeman are dismissed with prejudice. Defendants' motion [121] to authenticate an exhibit is denied as moot.

Freeman must, within ten days of this Order, show cause why the Court should not dismiss JPD and the official-capacity claims against Davis. If he does, JPD and Davis may respond within seven days, and Freeman may reply seven days after that. If Freeman fails to respond, those claims will be dismissed, and final judgment will be entered.

**SO ORDERED AND ADJUDGED** this the 15th day of May, 2025.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE